UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                      Case No. 19-20492
                                      Hon. Mark A. Goldsmith

KAI RIVERS,

        Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO COMPEL (Dkt. 213)

This matter is before the Court on Defendant Kai Rivers's motion to compel discovery pursuant to Federal Rule of Criminal Procedure 16 (Dkt. 213). The motion concerns partially redacted affidavits in support of two different search warrants. The first warrant was issued on May 17, 2019 and authorized the installation of a GPS tracker on a blue Hyundai. See GPS Warrant (Dkt. 213-2). The second warrant was issued on May 24, 2019 and authorized a search of Rivers's cell phone records for location information. See Cell Phone Warrant (Dkt. 213-3). Data from the GPS tracker were among the sources of information used to secure the cell phone warrant. See Cell Phone Warrant Aff. ¶ 14 (Dkt. 213-3).

Rivers argues that the GPS warrant affidavit "is so heavily redacted that Rivers cannot fairly assess whether the affidavit established probable cause." Mot. at PageID.1048 (Dkt. 213). Rivers seeks to determine whether the GPS warrant was unsupported by probable cause in order to determine whether he has a basis to seek exclusion of the fruits of the GPS warrant, i.e., the location information discovered through the subsequent cell phone warrant. Id. at 1048–1049.

Rivers thus requests an order compelling the Government to produce the redacted portions of the search warrant affidavits.

In its response, the Government argues that Rivers is not entitled to the redacted information at this time due to the need to protect the identities of confidential informants. Resp. at 14–16 (Dkt. 220). Further, the Government argues, (i) Rivers lacks a reasonable expectation of privacy in the blue Hyundai to challenge the GPS warrant and (ii) the affidavit for the cell phone warrant supplied probable cause even without the information from the GPS tracker. Id. at 6–14. The Government is correct that, even without the information from the GPS tracker, the cell phone warrant affidavit supplied probable cause for authorization of the cell phone warrant. Consequently, Rivers would not be successful in bringing a motion to suppress information discovered as a result of the cell phone warrant insofar as such a motion were based on a lack of probable cause for issuance of the warrant. Rivers's motion to compel is, accordingly, denied.[1]

## I. BACKGROUND

As of May 2019, the FBI was investigating over 30 smash-and-grab robberies of jewelry stores that had occurred since August 2018 across the United States; each fit a similar description and involved the same modus operandi. GPS Warrant Aff. ¶ 5 (Dkt. 213-2); Cell Phone Warrant Aff. ¶ 6. In one such incident, on April 10, 2019, two males entered a Jared's Galleria of Jewelry store located in Columbia, South Carolina and used sledgehammers to smash the glass of the diamond case and steal diamonds therefrom. GPS Warrant Aff. ¶ 6. On May 8, 2019, another jewelry robbery occurred in Baton Rouge, Louisiana. Cell Phone Warrant Aff. ¶ 8.

---

[1] Because the Court denies Rivers's motion on the basis that the cell phone warrant affidavit supplied probable cause, even without the information from the GPS tracker, the Court need not address the Government's alternative argument that Rivers lacks a reasonable expectation of privacy in the blue Hyundai.

The FBI's investigation revealed that many of the robberies were planned and coordinated from the Detroit area.  GPS Warrant Aff. ¶ 5; Cell Phone Warrant Aff. ¶ 6.  The FBI learned that for each of these robberies, typically two groups would drive to the robbery location from Detroit in two separate vehicles, one in a "clean" vehicle that was either properly registered or lawfully rented, and one in a stolen vehicle that could be ditched immediately after the robberies.  Cell Phone Warrant Aff. ¶ 7.

An anonymous tipster provided information that an individual named Darrell Reed was coordinating the jewelry store robberies from Detroit.  Id. ¶ 9.  The tipster also provided that Rivers was the getaway driver of the clean vehicle for multiple out-of-state robberies, including the Baton Rouge robbery.  Id.  The tipster's information was corroborated by a cooperating witness, whom the cell phone warrant affiant, an experienced FBI Special Agent named Michael Baumgartner, described as "credible and reliable."  Id. ¶¶ 9, 12.  The cooperating witness also provided FBI agents with additional information.  Id. ¶ 10.  Specifically, he told agents that Reed, Rivers, and another individual, Devon Manquil Newby, were planning another out-of-state robbery in which a blue Hyundai would be used as the clean vehicle.  Id.  The cooperating witness also provided agents with Rivers's cell phone number.  Id. ¶ 11.  A search in the FBI database confirmed that this number belonged to Rivers; specifically, that Rivers had used that number during a money transfer scheme investigated by the FBI's San Francisco office.  Id. ¶ 20.

The day after speaking to the cooperating witness, FBI agents conducted direct surveillance of the blue Hyundai.  Id. ¶ 13.  A teletype check of the vehicle's license plate revealed that it was registered to Enterprise.  GPS Warrant Aff. ¶ 14.  The agents were spotted surveilling the blue Hyundai.  Cell Phone Warrant Aff. ¶ 13.  On the same day, the renter of the blue Hyundai—

unidentified in the redacted cell phone warrant affidavit—contacted Enterprise and asked to switch vehicles.  Id.

On May 18, 2019, Magistrate Judge Elizabeth Stafford signed a search warrant authorizing the FBI to place a GPS tracker on the blue Hyundai.  Id. ¶ 14; see also GPS Warrant.  After the tracker was placed on the blue Hyundai, data from the tracker resulted in the identification of several locations of interest, including 9685 Woodbine in Redford, Michigan, Cell Phone Aff. ¶ 14, which is Rivers's address listed on his driver's license, id. ¶ 17.

On May 20, 2019, an Enterprise employee contacted one of the investigation agents and told him that the blue Hyundai was going to be exchanged for another vehicle.  Id. ¶ 15.  FBI agents went to the Enterprise rental location and saw the blue Hyundai being exchanged for a maroon Ford Escape.  Id.  Magistrate Judge David Grand issued a separate tracker warrant for the maroon Ford on May 20.  Id.  FBI agents conducted surveillance of this vehicle and observed it parked one house north of Rivers's 9685 Woodbine address.  Id. ¶ 17.

The FBI sought a search warrant for Rivers's phone.  In the affidavit in support of the warrant, Baumgartner attested that, based on the statements of the cooperating witness, surveillance by the FBI, and further investigation, he believed that Rivers had been involved and was continuing to be involved in the smash-and-grab robberies.  Id. ¶ 21.  Based on this information, Baumgartner attested, there was probable cause to believe that historical cell site information and call detail records going back to December 2018, when Rivers began participating in the smash-and-grabs, would provide evidence of these crimes.  Id. ¶ 22.  Magistrate Judge Anthony Patti signed the cell phone warrant on May 24, 2019.  See Cell Phone Warrant at PageID.1097.

On July 24, 2019, Rivers was indicted for assisting Reed in the smash-and-grab robberies by helping to coordinate the robberies and driving to some of the Jared store locations outside of Detroit to supervise the robberies, in violation of 18 U.S.C. § 1951(a).  See Indictment (Dkt. 27). Reed was indicted for leading the smash-and-grab robberies.  Id.  Subsequently, on September 25, 2019, Newby was also indicted for assisting Reed in the robberies by helping to coordinate the robberies and driving to some of the Jared store locations outside of Detroit.  See 2d Superseding Indictment (Dkt. 76).

## II. DISCUSSION

Rule 16 "delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution."  United States v. Llanez-Garcia, 735 F.3d 483, 493 (6th Cir. 2013) (punctuation modified).  Among other things, Rule 16 enables a defendant to obtain "books, papers, documents, data, photographs, [or] tangible objects" in "the government's possession, custody, or control," as long as the items are either material to preparing the defense or will be used in the government's case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(E).

"A defendant does not satisfy [the] requirement that an object be 'material to the preparation of the defendant's defense' by means of merely conclusory arguments concerning materiality."  United States v. Phillip, 948 F.2d 241, 250 (6th Cir. 1991) (citation omitted).  Rather, a defendant must make a prima facie showing of materiality.  Id.  The Supreme Court has determined that "defense" within the meaning of Rule 16 means the "defendant's response to the Government's case in chief."  United States v. Armstrong, 517 U.S. 456, 462 (1996).  Therefore, the rule only allows a defendant to obtain information "that 'refute[s] the Government's arguments

that the defendant committed the crime charged.'" United States v. Robinson, 503 F.3d 522, 532 (6th Cir. 2007) (quoting Armstrong, 517 U.S. at 462). It follows that information that does not counter the Government's case or bolster a defense is not material "merely because the government may be able to use it to rebut a defense position." United States v. Lykins, 428 F. App'x 621, 624 (6th Cir. 2011) (punctuation modified).

Here, Rivers argues that the redacted portions of the two warrant affidavits are critical to the determination of whether the cell phone warrant is supported by probable cause and, therefore, are material to the preparation of his defense. Mot. at 7.[2] The standard that governs a reviewing court's assessment of a search warrant affidavit is "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." United States v. Loggins, 777 F.2d 336, 338 (6th Cir. 1985). "The courts should not undertake a de novo review of the sufficiency of an affidavit, nor should they invalidate [a] warrant by interpreting [an] affidavit in a hypertechnical, rather than a commonsense, manner." United States v. Pelham, 801 F.2d 875, 877 (6th Cir. 1986) (punctuation modified, citation omitted). Rather, the magistrate's probable cause determination should be afforded great deference by the reviewing court. Id. "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." Loggins, 777 F.2d at 338.

It is well established that a magistrate judge may rely on hearsay contained in the affidavit when determining whether to issue a search warrant. United States v. Gunter, 551 F.3d 472, 479

---

[2] In his reply, Rivers argues that "[t]he facts surrounding the procurement of . . . [the GPS] warrant are important to Rivers's defense regardless of whether he would win a suppression motion." Reply at 3 (Dkt. 229). However, Rivers fails to support this conclusory argument. Thus, the Court confines its analysis to the reason for production stated in Rivers's motion.

(6th Cir. 2009). However, when confronted with hearsay information from an informant, courts "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of circumstances." United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003). These three factors are not evaluated independently, however, as "more of one compensates for less of the others." United States v. Hines, 885 F.3d 919, 925 (6th Cir. 2018).

When the court is provided with assurances that the informant is reliable, "independent corroboration of the tip by police is not required." United States v. Crumpton, 824 F.3d 593, 616 (6th Cir. 2016). An informant's information is considered to have "greater reliability"—and, therefore, to be more supportive of a finding of probable cause—if the affidavit recites that the police know the informant's identity or that the identity has been disclosed under oath to the issuing judge. United States v. May, 399 F.3d 817, 823 (6th Cir. 2005). This is so because an informant, if identified, would be subject to criminal liability for making a false report. Id. at 823–825; see also United States v. Hodge, 714 F.3d 380, 384–385 (6th Cir. 2013) ("Statements from a source named in a warrant application . . . are generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability."); United States v. Williams, 544 F.3d 683, 690 (6th Cir. 2008) ("[T]he warrant here named the informants, and named informants, unlike confidential informants, require little corroboration.").

In terms of the veracity/basis of knowledge framework, the Supreme Court has explained that "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." Illinois v. Gates, 462 U.S. 213, 234 (1983); see also United States v. Howard, 632 F. App'x 795, 802 (6th Cir. 2015) ("In assessing

an informant's 'basis of knowledge,' the degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements.").

As for corroboration, "it has been the rare case in which the Sixth Circuit has found a search warrant based on an informant tip to be inadequate if the information has been corroborated to some degree." United States v. Jenkins, 396 F.3d 751, 760 (6th Cir. 2005) (punctuation modified). Further, police need not corroborate every detail of an informant's tip. See Howard, 632 F. App'x at 805 ("By substantiating one detail of Compton's story [that was unique to the defendant's modus operandi] . . . [law enforcement] reduced the chance that Compton's tip was a reckless or prevaricating tale.") (punctuation modified). Finally, an informant's tip can be corroborated by various means. For instance, corroboration can be made through (i) police officers' direct surveillance, see, e.g., United States v. Smith, 182 F.3d 473, 478 (6th Cir. 1999); (ii) through another informant's consistent information, see, e.g., United States v. Bryant, 145 F. App'x 95, 97 (6th Cir. 2005) (holding that an officer sufficiently corroborated a confidential informant's tip through a second reliable source who corroborated certain important information); United States v. Lancaster, 145 F. App'x 508, 511 (6th Cir. 2005) (holding that consistency between the reports of two informants can be sufficient corroboration to support a finding of probable cause); or (iii) through social media, see, e.g., United States v. Mills, 357 F. Supp. 3d 634, 648–649 (E.D. Mich. 2019); United States v. Patton, No. 15-20246, 2018 WL 3370545, at *2 (E.D. Mich. July 10, 2018).

The Court concludes that, even though portions of the affidavit are redacted, it is nevertheless clear that the cell phone warrant affidavit supplied probable cause for the magistrate to authorize the warrant. Even if the information from the GPS tracker had not been included in

the cell phone warrant affidavit, this affidavit still would have supplied sufficient probable cause for issuance of the cell phone warrant. Each point is addressed in turn.

### i. The Cell Phone Warrant Affidavit Established Probable Cause

The cell phone warrant affidavit was based on information provided by a cooperating witness. Although redacted, this witness's identity appears to have been known to FBI agents and the magistrate judge who signed the warrant. <u>See</u> Cell Phone Warrant Aff. ¶ 10 ("Cooperator #1 (C1) is [redacted] . . . ."). This stands in contrast to the tipster referenced in the affidavit, who is identified an "unknown individual" who "provided an anonymous tip." <u>Id.</u> ¶ 9. Further, it would make little sense to refer to an individual as a "cooperating witness" if this individual had refused to identify himself at least to law enforcement officials. Because the identity of this individual was presumably known to law enforcement officials as well as the magistrate judge, the witness could be prosecuted if the witness provided false information. <u>See</u> <u>May</u>, 399 F.3d at 823. The information provided by the witness may, therefore, be considered to have greater reliability.

Even if the witness's identity had been disclosed, the witness's information may nevertheless be considered reliable because the affiant provided information about the underlying circumstances that led him to conclude that the witness is reliable. <u>Id.</u> at 824 ("So long as an issuing judge is informed of some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was credible, or his information reliable, an affidavit is sufficient to support a finding of probable cause.") (punctuation modified). Specifically, as the affiant provides and the affidavit supports, "FBI agents were able to corroborate other statements that Cl provided by conducting surveillance, comparing his statements to other witness accounts, social media evidence, and conducting further investigation." Cell Phone Warrant Aff. ¶ 12. Further, the witness's information is entitled to greater weight due

to the detailed nature of the information.  See Gates, 462 U.S. at 234.  The witness was able to provide specific details such as the names of individuals involved in the smash-and-grab operations, the plan to use a blue car in a robbery planned for the future, Rivers's cell phone number, information that the robberies involved the use of a "clean" car, and information that Rivers was the individual who drove the clean car in the Baton Rouge robbery.  Cell Phone Warrant Aff. ¶ 9–11.

Due to the high reliability of the cooperating witness's information, this information did not need to be corroborated to support a probable cause finding.  See United States v. Allen, 211 F.3d 970, 976 (6th Cir. 2000) (requiring independent corroboration only if there is an "absence of any indicia of the informants' reliability").  Nevertheless, the information was corroborated through several means, including direct surveillance and the statements of other witnesses.

Based on the foregoing, the magistrate judge had a substantial basis for finding that the affidavit established probable cause to believe that evidence of the smash-and-grab robbery operation would be found by obtaining cell site data and similar information from Rivers's cell phone.

### ii.  Probable Cause Does Not Depend on Information from the GPS Tracker

Even if the information obtained from the GPS tracker is omitted from the cell phone warrant affidavit, this affidavit would still have supplied sufficient probable cause for authorization of the cell phone warrant.  As discussed above, in addition to obtaining Rivers's cell phone number from the cooperating witness, the FBI agents also obtained information from this witness about the nature of the smash-and-grab robberies; Rivers's involvement as the clean driver for several of the out-of-state robberies, including the Baton Rouge robbery; and Rivers's involvement in helping to plan another out-of-state robbery in which the blue Hyundai would be used as the clean vehicle.

This witness's reliability is established either through the disclosure of his identity or through the fact that the affiant made clear some of the circumstances that led him to conclude that the witness was credible and reliable. The information from the GPS tracker has no discernible impact on the witness's reliability.

Further, the witness's information was corroborated through several means. It is true that the data from the GPS tracker corroborated the witness's statements insofar as it showed that the blue Hyundai traveled to Rivers's address, thereby corroborating, at least to some degree, the witness's statement that Rivers was involved in the upcoming robbery involving the blue Hyundai. However, the witness's information about Rivers's involvement in the upcoming smash-and-grab robberies was corroborated by other means as well, including the agents' direct surveillance of the maroon Ford, which they observed parked near Rivers's address. Agents were monitoring the maroon Ford because they had received information that it was being exchanged for the blue Hyundai—and indeed saw it exchanged—not because of any information that was obtained from the GPS tracker for the blue Hyundai. In addition, agents were aware of Rivers's address based on his driver's record of address, not based on information from the GPS tracker for the blue Hyundai.

A witness's information needs only to be corroborated "to some degree"—not in every imaginable way possible. See Jenkins, 396 F.3d at 760. Here, the cooperating witness's information was sufficiently corroborated, even without the information from the GPS tracker. If the information from the GPS tracker had been completely omitted from the cell phone warrant affidavit, the magistrate judge still would have had a substantial basis for finding that the affidavit established probable cause to believe that evidence of the smash-and-grab robbery operation would be found by obtaining cell site data and similar information from Rivers's cell phone.

11

## IV. CONCLUSION

For the foregoing reasons, Rivers would not be successful in bringing a motion to suppress information discovered as a result of the cell phone warrant insofar as such a motion were premised on the theory that the cell phone warrant affidavit did not supply probable cause for authorization of the warrant. Rivers, therefore, has not carried his burden of showing that the redacted portions of the warrant affidavits are material to the preparation of his defense. Rivers is not entitled to production of the redacted portions of the warrant affidavits at this time. Accordingly, the Court denies Rivers's motion to compel (Dkt. 213).

SO ORDERED.

Dated:  June 3, 2021                              s/Mark A. Goldsmith
    Detroit, Michigan                    MARK A. GOLDSMITH
                                     United States District Judge